Eliza Gene Bolton, Gdn. *v.* Easterling, et al.

No. 40595          December 2, 1957          98 So. 2d 658

*W. S. Murphy,* Lucedale; *Jesse M. Byrd,* Leakesville, for appellants.

*Buntin & Martin,* Gulfport, for appellees.

McGEHEE, C. J.

This suit involves the claim of appellants, Eliza Gene Bolton, guardian of Ollie Mae McLeod, Ceola Little Mc-Leod, Johnnie Edward McLeod, and Robert Little Mc-Leod, the dependent children of Johnnie McLeod, a deceased employee, under the Workmen's Compnsation Act, wherein the said minors claimed to be the sole dependents of the deceased at the time of his injury and death. There is no controversy as to liability of the appellees, W. A. Easterling as employer, and U. S. Fidelity & Guaranty Company as insurance carrier, and as to their liability for the death benefits to which the dependents of the deceased employee are entitled, it being conceded that his death arose out of and in the course of his employment while driving a truck, loaded with logs, which overturned and caused his death.

The controversy before the attorney-referee, the full Commission, and the circuit court was whether or not Jessie Mae Ratliff McLeod, the second wife of the employee, and her children, Mary Ella Ratliff and Leon Ratliff, minors, are entitled to share in the death benefits under the Workmen's Compensation Law, along with the appellant, the children of the employee, by a former marriage. The attorney-referee, the full Commission, and the circuit court all held that each of the claimants were entitled to share in the death benefits provided for under the Workmen's Compenation Law, and the appellants have prosecuted this appeal and contend that they, as the four minor dependent children by a former marriage of Johnnie McLeod, deceased, are entitled to the full compensation provided for by the act, and to the exclusion of his second wife, Jessie Mae Ratliff McLeod, and her two minor children.

The deceased employee, Johnnie McLeod, was first married to Laura Bradford who died on July 28, 1950. The four minors in behalf of whom this appeal is taken are the children of that marriage. The said Johnnie McLeod later married Jessie Mae Ratliff McLeod, whose

maiden name was Jessie Mae Cooley, February 5, 1955. Jessie Mae was formerly married to Leon Ratliff, who obtained a divorce from her on September 25, 1951, at which time the custody of their children, Mary Ella Ratliff and Leon Ratliff, Jr., both minors, were awarded to the father, Leon Ratliff, for and during the school term of each year, and for the remaining three months to their mother, Jessie Mae Ratliff. The decree of divorce required that Leon Ratliff pay to the mother of his children the sum of $10 per month each during such period of time as the said minors were in her custody. However, the children only remained with their father for a period of about three months during the year 1953 and then slipped away from home and returned to their mother. According to the testimony of Jessie Mae, she and her two children were supported mainly by Johnnie McLeod, with whom she had lived nearly eight years prior to his death on October 18, 1955.

On September 6, 1956, which was subsequent to the hearing of this cause by the attorney-referee and the full Commission, and while the case was pending in the Circuit Court of Greene County on appeal, Jessie Mae obtained a modification of the former divorce and alimony decree, and which modified decree recited, among other things, that "since the time of the said divorce, a period of almost five years, petitioner has had the full and exclusive custody of said children (Mary Ella Ratliff and Leon Ratliff, Jr.) with the exception of a three month period in 1953 and that she had fed, clothed, and provided a home for said minors wholly out of her own earnings and that the said Leon Ratliff has contributed nothing to the support of said minors nor has he made any effort to have custody except for the three month period above set out."

Following the granting of the divorce to Leon Ratliff from his wife, Jessie Mae Ratliff, and upon his failure to contribute to the support of their two minor chil-

dren, the said Jessie Mae Ratliff McLeod sought the services of an attorney in order to obtain a citation for contempt against Leon Ratliff because of his failure to contribute to the support of his said children. Upon learning that it would be necessary for her to pay an attorney's fee of $50 in connection with the handling of the proposed contempt proceedings, she found it necessary to abandon the same because of her inability to pay the attorney's fee. We do not think that the divorce and alimony decree rendered in the case of Leon Ratliff against Jessie Mae Ratliff on September 25, 1951, nor the decree of September 6, 1956, modifying the original divorce and alimony decree between these parties have the effect of defeating the claim of Jessie Mae Ratliff McLeod and her two minor children to share in the death benefits under the Workmen's Compensation Law as the dependent widow and stepchildren of Johnnie Mc-Leod as dependents of the deceased at the time of his injury and death. Although it was the duty of Leon Ratliff to support his two children, the fact remains that Jessie Mae Ratliff McLeod was unsuccessful in her efforts in trying to compel him to do so.

The proof in the instant case discloses on behalf of Jessie Mae Ratliff McLeod and her two children, Mary Ella Ratliff and Leon Ratliff, Jr., that after she went through a ceremonial marriage with Johnnie McLeod on February 5, 1955, she and her two children, together with Johnnie McLeod and his four children by his former marriage, went to Leaf or McLain, Mississippi, where he secured employment in a logging operation. While Jessie Mae and her two children remained at Leaf or McLain with Johnnie McLeod and his four children, they lived awhile with his aunt and awhile with his sister, but that due to the irregularity of the logging operations on account of rain, Johnnie McLeod was unable to make enough money to properly support himself and his four children, and Jessie Mae and her two children. Con-

sequently, she and Johnnie McLeod agreed that she should go back to Gulfport and get a job in order to meet payments on her furniture. She testified that ''Me and him agreed that I would go back and get me a job and go to work and what little he made was not enough to send to pay on my furniture, so I went back and got a job.'' She further testified that until his death he came to Gulfport almost every weekend and would bring her some money to help support her and her children, that whenever he failed to come to Gulfport over the weekend he would send her some money. She also testified that ''He took me back. We made this agreement that I would go back and get a job and pay for my furniture so they would not take it back.'' She was contradicted by the testimony of some of Johnnie McLeod's relatives as to whether or not he went to see her at Gulfport over the weekends, but this conflict in the testimony merely presented an issue of fact for the determination of the attorney-referee and the Commission.

Under Section 6998-13 (g), Miss. Code of 1942, it is provided that: ''All questions of dependency shall be determined as of the time of the injury (or death.)''

Section 6998-02 (12), Code of 1942, the word ''child'' is defined as follows: ''* * * a child in relation to whom the deceased employee stood in the place of a parent for at least one year prior to the time of the injury, and a stepchild * * *''

In the case of Deemer Lumber Company v. Hamilton, 211 Miss. 673, 52 So. 2d 634, this Court said: ''We are of the opinion that the word 'dependent' as used in the Workmen's Compensation Act means a person who is dependent upon the employee, in whole or in part, for his support and relies on same.'' See also Stewart Company v. Christmas, 224 Miss. 29, 79 So. 2d 526, cited by the appellants, and which held that where the employee was engaged in the work of hauling logs which kept him away from home most of the week, but where he came

home at least every week to visit his wife, and helped support her and the grand children living with her, they are his dependents within the meaning of the Workmen's Compensation Act.

██ It is argued that the attorney-referee, full Commission and the circuit court were in error in holding that Jessie Mae Ratliff McLeod was the widow of the deceased employee or that her two children were his stepchildren, within the meaning of the Workmen's Compensation Act. But since Jessie Mae was legally married to Johnnie McLeod, she clearly became his widow upon his death, and her children by a former marriage were clearly his stepchildren.

██ But it is further contended that Jessie Mae and her two children were not entitled to share in the death benefits resulting from the death of the employee, Johnnie McLeod, for the reason that she was living apart from him without justifiable cause, and supporting her own children; and that they were not members of his household and family. We have heretofore shown that if they were dependent upon the deceased employee, either in whole or in part, they were entitled to compensation, and we are unable to agree that she was living separate and apart from Johnnie McLeod without justifiable cause. If she had remained at Leaf or McLain, she would have had to continue living with his aunt or sister, and without his being able to make sufficient earnings to adequately support them and his own four children. Moreover, according to the testimony of Jessie Mae, which the attorney-referee was entitled to believe if he was convinced of its truthfulness, it was necessary for her to go to Gulfport and get a job, both for the purpose of saving her furniture from seizure for the balance due on the purchase price and of helping to support her children. ██ It is unnecessary that we continue to cite and discuss the previous decisions of this Court in great number, and to the effect that: ''* * * we will not reverse

the findings of fact by the attorney-referee and Commission if there is substantial evidence to support them, or, stated differently, that we will not so reverse, unless such findings are manifestly against the weight of the evidence. The cases so holding are so numerous we need not consume space and time to cite them.'' California Eastern Airways v. Neal, 228 Miss. 370, 87 So. 2d 895.

The order of the attorney-referee, which was affirmed by the full Commission, and later by the circuit court, is hereby affirmed and the cause remanded for payment of the death benefits to the appellant, Eliza Gene Bolton, as guardian of the four minor children of Johnnie McLeod, deceased, and also to Jessie Mae Ratliff McLeod and her two minor children, under a division of such benefits among them as is provided for by the Workmen's Compensation Act.

Affirmed and remanded.

*Lee, Arrington, Ethridge* and *Gillespie, JJ.*, concur.